UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| JERMAINE TARPKIN ) | |
| ) | |
| v. ) | 1:04-cv-390/1:01-cr-58 |
| ) | *Chief United States District Judge Collier* |
| UNITED STATES OF AMERICA ) | |

### **MEMORANDUM**

Defendant Jermaine Tarpkin ("Tarpkin") has filed a *pro se* motion for post-conviction relief pursuant to 28 U.S.C. § 2255 (Court File No. 1). Tarpkin was convicted by a jury of one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g); one count of possession of a stolen firearm in violation of 18 U.S.C. §§ 922(j) and 924(a)(2); one count of possession with intent to distribute marijuana in violation of the 21 U.S.C. § 841(a)(1) and (b)(1)(D); and one count of possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(a)(I).

Tarpkin contends the Court lacked jurisdiction to prosecute him under 21 U.S.C. § 841(a) and 18 U.S.C. § 922(g); the evidence was insufficient to support the convictions; he is actually innocent of the possession of a controlled substance with intent to distribute offense because he possessed the substance for his personal use; and he is actually innocent of the gun charges because he never possessed the firearm. In addition, Tarpkin contends the drug statutes are unconstitutional in light of *Apprendi*.[1] The United States opposes the motion.

---

[1] *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

After reviewing the record, the Court concludes that Tarpkin's § 2255 motion will be **DENIED**. The record conclusively shows that Tarpkin is not entitled to any relief under 28 U.S.C. § 2255. There is no need for an evidentiary hearing.

## I. STANDARD OF REVIEW

A federal prisoner may file a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence on the ground that the sentence was imposed in violation of the United States Constitution. To obtain relief under § 2255 based on an alleged constitutional error, Tarpkin bears the burden of establishing an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Hill v. United States*, 368 U.S. 424, 428 (1962); *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir.1999). To warrant relief under § 2255, Tarpkin is required to show a fundamental defect in the criminal proceedings which inherently results in a complete miscarriage of justice or an egregious error that rises to the level of a violation of constitutional due process. *Davis v. United States*, 417 U.S. 333, 346 (1974); *Griffin*, 330 F.3d at 736; *Gall v. United States*, 21 F.3d 107, 109 (6th Cir.1994).

## II. PROCEDURAL HISTORY

On April 11, 2001, a federal grand jury returned a five-count indictment charging Tarpkin with drug and gun offenses. Tarpkin was charged with: (1) being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g); (2) being a felon in possession of ammunition in violation of 18 U.S.C. § 922 (g); (3) possession of a stolen firearm in violation of 18 U.S.C. § 922(g); (4) possession with intent to distribute marijuana in violation of 21 U.S.C. § 841 (a) and (b)(1)(C); and (5) possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. §

924(c).

The jury convicted Tarpkin on all counts, as indicted, except for Count Two, the charge of being a felon in possession of ammunition. On October 19, 2001, the District Court sentenced Tarpkin to 195 months of imprisonment. Tarpkin filed a timely notice of appeal and his judgment of conviction on all counts was affirmed on June 19, 2003. *United States v. Tarpkin*, 68 Fed.Appx. 594 (6th Cir. June 19, 2003) (unpublished decision), *available in* 2003 WL 21456256. Tarpkin subsequently filed a petition for rehearing *en banc* which was denied on August 25, 2003, and the United States Court of Appeals for the Sixth Circuit (the "Sixth Circuit") issued its mandate on September 2, 2003. Tarpkin's judgment became final on November 24, 2003, upon expiration of the ninety-day-period within which Tarpkin could have filed a petition for writ of certiorari. *See Clay v. United States*, 537 U.S. 522 (2003) (one-year clock begins to run with expiration of ninety-day period within which petitioner could have filed for certiorari review). Tarpkin timely filed this instant § 2255 motion, which was treated as filed on November 23, 2004, the date Tarpkin placed the motion into the prison mail system. *See In re Sims*, 111 F.3d 45, 47 (6th Cir. 1997).

## III. <u>FACTS</u>

The following recitation of the facts is from the opinion of the Sixth Circuit:

On April 3, 2001, Tarpkin, the defendant, had arranged to visit his minor child, who resided with the child's mother, Pamela McIntosh. Tarpkin was at his own mother's house when McIntosh accompanied by her 80-year-old aunt, came to pick him up. On the way to McIntosh's residence, Tarpkin initially rode in the back seat, but moved to the front after the aunt was dropped off.

The afternoon visit at McIntosh's house did not go well. Tarpkin and McIntosh argued; Tarpkin also cursed at her "constantly," and, at one point, McIntosh hid in her bedroom to avoid him. McIntosh considered calling the police, but decided not to because her disabled, five-year-old son was afraid of the police. Eventually, McIntosh asked Tarpkin to leave, telling him that she would pay for a cab. Tarpkin

3

insisted that she drive him home. McIntosh asked her neighbor, Connie Miles, to ride with them. When Miles arrived, McIntosh asked her if she had a gun or a knife because she was so upset she wanted to shoot him.

On the trip back to Tarpkin's mother's house, Tarpkin sat in the front with his book bag, while Miles sat in the back. As they were driving, Tarpkin argued with McIntosh and poked her in the face. McIntosh finally pulled over into a convenience store parking lot, telling Tarpkin that she was going to call the police. Tarpkin then showed her that he had a bag of marijuana in his pocket, apparently hoping to deter her. McIntosh nonetheless went inside the store and called the police, telling them that she wanted Tarpkin out of her car. As the police arrived, McIntosh looked out to her car and saw Tarpkin, still sitting in the front passenger seat, "bend down" a couple of times. Miles, still sitting in the back seat, saw Tarpkin reach under the front seat twice with his right hand. Tarpkin then got out of the car and tried to "sweet talk" McIntosh into coming to talk to him.

When it appeared that the police were going to leave without doing anything. [sic] McIntosh told them that Tarpkin had had marijuana in his jacket and that it was probably now in her car. She then gave the police permission to search the car. On the floor of the front passenger side of the car, under Tarpkin's book bag, the police found a plastic bag containing 62.8 grams of marijuana. On Tarpkin's person, they found a box of cigars, with one of the four cigars missing. In the car's astray, they found a partially smoked "blunt," a marijuana cigar, which Tarpkin admitted was his, along with a few marijuana cigarettes. And under the front passenger seat, they found a loaded Ruger .45- caliber semi-automatic pistol, lying as if the person who put it there had been holding it in his/her right hand. Tarpkin denied that the gun was his. Tarpkin was arrested at the scene.

*United States v. Tarpkin*, 68 Fed. Appx. 594, 595 (6th Cir. June 19, 2003), (unpublished table decision)

*available in* 2003 WL 21456256, at *1.

### IV. Analysis of Claims

Tarpkin raises five claims in his § 2255 motion. Tarpkin claims he is entitled to § 2255 relief because (1) jurisdiction did not exist to prosecute him under 21 U.S.C. § 841; (2) jurisdiction did not exist to prosecute him under 18 U.S.C. § 922(g); (3) the evidence was insufficient to convict him; (4) the drug statutes are unconstitutional in light of *Apprendi*; and (5) he is actually innocent of the

4

crime for which he is convicted (Court File No. 1).

A. Lack of Jurisdiction under 21 U.S.C. § 841

Tarpkin claims the United States failed to prove an interstate nexus as to his intrastate possession of the marijuana and thus, the Court was without subject matter jurisdiction to convict him of violating 21 U.S.C. § 841. Tarpkin relies upon *United States v. Lopez*, 514 U.S. 549 (1995)(holding that the Gun-Free School Zones Act of 1990, 18 U.S.C. § 922(q)(1)(A), which made it a federal crime to knowingly possess a firearm in a school zone, exceeded Congress' authority under the Commerce Clause) and its progeny.

The Sixth Circuit and every other circuit to address this issue has rejected Tarpkin's argument that the Supreme Court decision in *Lopez* prohibits Congress from extending the reach of its authority to drug crimes which occur solely intrastate. *United States v. Brown*, 276 F.3d 211, 214 (6th Cir.), *cert. denied*, 535 U.S. 1079 (2002). The Sixth Circuit has concluded the federal drug statutes are authorized by Congress's powers under the Commerce Clause even though the laws may reach only intrastate drug crimes. *Id.*; *see also United States v. Tucker*, 90 F.3d 1135 (6th Cir. 1996). The Sixth Circuit observed that such has been the holding of every circuit to address the issue since the *Lopez* case. *Brown*, 276 F.3d at 214-15; *see also, e.g., United States v. Patterson*, 140 F.3d 767, 772 (8th Cir.) ("[I]ntrastate drug activity affects interstate commerce and []Congress may regulate both intrastate and interstate drug trafficking under the Commerce Clause"), *cert. denied*, 525 U.S. 907 (1998); *United States v. Westbrook*, 125 F.3d 996, 1009 (7th Cir.)("It is clear to us that Congress validly exercised its authority under the Commerce Clause when it enacted the Controlled Substances Act[.]"), *cert. denied*, 522 U.S. 1036 (1997); *United States v. Edwards*, 98 F.3d 1364, 1369 (D.C.Cir.1996) ("[T]he Drug Act includes specific findings that intrastate drug

activity has a substantial effect on interstate drug activities and that effective control of drug activities occurring intrastate requires both interstate and intrastate regulation.21 U.S.C. § 801"), *cert. denied*, 520 U.S. 1170 (1997); *United States v. Orozco*, 98 F.3d 105, 107 (3d Cir.1996); *United States v. Kim*, 94 F.3d 1247, 1249-50 (9th Cir.1996); *United States v. Rogers*, 89 F.3d 1326, 1338 (7th Cir.) ("Unlike possession of firearms, which the Gun-Free School Zones Act proscribed, drug dealing is an economic activity that affects interstate commerce."), *cert. denied*, 519 U.S. 999 (1996); *United States v. Lerebours*, 87 F.3d 582, 584-85 (1st Cir.1996), *cert. denied*, 519 U.S. 1060 (1997); *United States v. Genao*, 79 F.3d 1333, 1336 (2d Cir.1996); *United States v. Wacker*, 72 F.3d 1453, 1475 (10th Cir.1995); *United States v. Clark*, 67 F.3d 1154, 1166 (5th Cir.1995), *vacated on other grounds*, 519 U.S. 802 (1996); *United States v. Leshuk*, 65 F.3d 1105, 1111-12 (4th Cir.1995) (observed that *Lopez* does not cause the court it alter its view that Congress has the authority under the Commerce Clause to criminalize the intrastate possession, distribution, and sale of controlled substances).

In light of *Brown* and other clear precedent soundly rejecting this claim, the Court concludes Tarpkin's constitutional jurisdictional challenge regarding his conviction pursuant to 21 U.S.C. § 841 is without merit. Accordingly this claim will be **DISMISSED**.

B.  Lack of Jurisdiction Under § 922(g)

Tarpkins second claim is similar to his first in that he argues § 922(g) is unconstitutional because the statutory interstate commerce element must relate to petitioner's possession of the firearm, which was purely intrastate activity. This argument, likewise, is without merit.

Section 922(g)(1) makes it unlawful for a felon "who has been convicted in any court of [] a crime punishable by imprisonment for a term exceeding one year ⋯ to ship or transport in

interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." In the aftermath of *United States v. Lopez*, 514 U.S. 549 (1995), numerous criminal defendants have challenged the validity of § 922(g)(1). The Sixth Circuit and every other court of appeals that has addressed a facial challenge to § 922(g)(1) under the Commerce Clause has rejected such challenge. *United States v. Thompson*, 361 F.3d 918 (6th Cir.), *cert. denied*, 543 U.S. 859 (2004); *United States v. Chesney*, 86 F.3d 564, 568-69 (6th Cir. 1996); *United States v. Williams*, 128 F.3d 1128, 1133-34 (7th Cir. 1997).

As did the criminal defendant in *Thompson*, Tarpkin argues the reliance on the presence of a jurisdictional element in the statute (the requirement the firearm be "in or affecting commerce") does not by itself ensure the statute falls within Congress's commerce power. Tarpkin cites *United States v. Morrison*, 529 U.S. 598 (2000) and *Jones v. United States*, 529 U.S. 848 (2000) and argues these cases cast doubt on the Sixth Circuit's holdings that the jurisdictional element of § 922(g) satisfies the Commerce Clause. The Court disagrees.

The Sixth Circuit has previously specifically addressed this same argument and held that 922(g) is constitutional on its face under the Commerce Clause and the interstate commerce nexus is satisfied by evidence of a "minimal nexus that the firearm [has] been at some time, in interstate commerce." *United States v. Thompson*, 361 F.3d at 923 (quoting *United States v. Napier*, 233 F.3d 394 (6th Cir. 2000). In *Napier*, the Sixth Circuit reviewed the constitutionality of § 922(g) in view of *United States v. Morrison*, 529 U.S. 598 (2000) (observing that simply because Congress concludes a particular activity substantially affects interstate commerce does not necessarily make it so and whether particular operations affect interstate commerce sufficiently to come under the

7

constitutional power of Congress to regulate them is ultimately a judicial rather than a legislative question, the Court concluded the Commerce Clause does not provide Congress with authority to enact the Violence Against Women Act) and *Jones v. United States*, 529 U.S. 848 (2000) (holding that § 844(i) does not cover the arson of an owner-occupied residence not used in commerce or in an activity affecting commerce). The *Napier* court concluded § 922(g)(8) is not an unconstitutional exercise of Congress' power under the Commerce Clause. Although *Napier* involved a conviction under § 922(g)(8) rather than under § 922(g)(1), the Sixth Circuit concluded in *Thompson* that "[b]oth provisions criminalize possession of a firearm, and the same jurisdictional element governs both provisions." *Id.* at 923. The Sixth Circuit found that the fact that § 922(g)(1) applies to felons and § 922(g)(8) applies to persons subject to domestic violence restraining orders does not offer a basis for differential treatment; thus, "[i]n all material ways, *Napier* controls" and 922(g) represents a valid exercise of legislative power under the Commerce Clause. *Thompson*, 361 F.3d at 922-23.

*Thompson* provides the governing legal precedent and the evidence in the instant case demonstrated that the weapon was made in Connecticut and traveled in interstate commerce to reach the state of Tennessee (Trial Transcript, at 277). Accordingly, because *Thompson* provides the governing legal precedent and because the Government presented evidence at trial that the weapon moved in interstate commerce, the Court reject's Tarpkin's constitutional challenge to his § 922(g) conviction.

3.  Sufficiency of the Evidence

In his third and fourth claims, Tarpkin maintains the evidence is insufficient to support his convictions. Tarpkin argues the evidence, which is nothing more than an "inference upon inference," is insufficient to prove he possessed the firearm. Additionally, Tarpkin claims the

8

evidence was

insufficient to prove he possessed the marijuana with intent to distribute rather than merely for personal use. The Court will address these claims together.

Tarpkin challenged the sufficiency of the evidence for each count of conviction on direct appeal. The Sixth Circuit rejected Tarpkins arguments and affirmed his convictions concluding there was sufficient evidence to support each conviction. *United States v. Tarpkin*, 68 Fed. Appx. 594 (6th Cir. 2003), (unpublished table decision), *available in* 2003 WL 21456256. This lower court cannot review the decision of the Court of Appeals and is bound by the decision of the Sixth Circuit adjudicating Tarpkin's direct appeal.

Moreover, once a matter has been decided adversely to a defendant on direct appeal, he may not re-litigate it in a collateral attack under § 2255. Tarpkin is prohibited from using a § 2255 motion to relitigate the same issues that were presented and decided on his direct appeal. Issues which are presented and considered on direct appeal cannot be litigated again in a § 2255 proceeding absent exceptional circumstances or an intervening change in the law. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999). Tarpkin offers no new issues of fact or law differentiating this from his appellate claim. Tarpkin is attempting to re-litigate matters that were previously considered and rejected by the United States Court of Appeals for the Sixth Circuit. Accordingly, absent exceptional circumstances which would allow Tarpkin to re-litigate this issue, this claim will be **DENIED**.

    4.    *Apprendi* Renders Drug Statute Unconstitutional

Tarpkin claims that his attack on the constitutionality of the delegation of authority to

9

schedule drugs under 21 U.S.C. § 811 "is not an *Apprendi* issue, but simply comes to light in [sic] wake of *Apprendi*." Tarpkin claims that 21 U. S.C. § 811(a) and (b) are unconstitutional because they allow the Attorney General to change the schedules of controlled substances without Congressional vote. This claim is procedurally barred because it should have been raised at trial or on direct appeal and Tarpkin has provided no explanation to excuse his default.

Moreover, decades before Tarpkin's sentencing, both the Fifth and Eleventh Circuit had rejected constitutional challenges to the delegation of authority to schedule drugs resulting from § 811. *See e.g.*, *United States v. Hope*, 714 F.2d 1084, 1087 (11th cir. 1983) (analyzing § 811(3)); *United States v. Gordon*, 580 F.2d 827, 840 (5th Cir.) (concluding that delegation of the authority to schedule drugs under § 811(a) is constitutionally permissible), *cert. denied*, 439 U.S. 1051 (1978); *see also United States v. Lane*, 931 F.2d 40, 41 (11th Cir. 1991) (rejecting the argument that the Attorney General improperly had reclassified methamphetamine to a schedule II drug).

Since Tarpkin's sentencing, the Sixth Circuit has addressed this issue and concluded Congress's delegation of rule-making authority to the Attorney General in 21 U.S.C. § 811(a)(1) is not a violation of the constitutional separation of powers, joining their sister circuits who had already found this delegation of authority to be constitutional. *United States v. Alcorn*, 93 Fed.Appx. 37, 40 (6th Cir.) (unpublished decision), *cert. denied*, 543 U.S. 854 (2004), *see also United States v. Gori*, 324 F.3d 234, 240 (3rd Cir. 2003); *United States v. Kinder*, 946 F.2d 362, 368 (5th Cir. 1991); and *United States v. Roark*, 924 F.2d 1426, 1428-29 (8th Cir. 1991).

Based upon the clear precedents upholding the constitutionality of the Attorney General's power to reclassify controlled substances among the five schedules established by Congress, this claim will be **DENIED**.

5. Actual Innocence

In his last claim, Tarpkin identifies the claim as actual innocence in his § 2255 motion and directs the Court to see his memorandum presumably for the factual support for this claim. Tarpkin contends he is actually innocent of the offense of felon in possession of a firearm because he never possessed the firearm. Tarpkin also professes his actual innocence of the controlled substance with intent to distribute conviction claiming he possessed the substance solely for his personal use. Thus, Tarpkin is actually arguing the evidence is legally and factually insufficient to support his convictions. Thus, although he has labeled the claim as one of actual innocence, he is actually attacking the sufficiency of the evidence used to convict him and makes the same arguments he presented to the appellate court to support his insufficient evidence claim. Nevertheless, either type of claim–insufficient evidence claim or actual innocence claim–could have been fully and completely addressed before this Court during a trial or on direct review. Since Tarpkin labeled the claim as one of actual innocence, the Court will construe it as such and finds it is procedurally defaulted. Tarpkin presumably contends his procedural default for failing to raise his actual innocence claim on direct appeal is excused based on counsel's failure to raise the actual innocence claim on direct review.

A "claim of actual innocence is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404 (1993). The actual innocence exception is very narrow in scope and requires proof of factual of innocence, not just legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 624 (1998) ("It is important to note ... that 'actual innocence' means factual innocence, not mere legal insufficiency.") To obtain any relief

on the basis of an actual innocence claim, Tarpkin must present evidence of innocence so compelling that it undermines the Court's confidence in the criminal proceeding's outcome of conviction. Thus, Tarpkin must show that he did not commit the crime as charged, not simply that some error in procedure occurred.

Tarpkin is submitting a *free-standing* substantive actual innocence claim. There is a *free-standing* substantive actual innocence claim in a capital case which is based on actual innocence and which requires an extraordinarily high threshold showing. S*ee Herrara v. Collins*, 506 U.S. at 417. Tarpkin advances a *free-standing* claim of actual innocence, a claim the Supreme Court has never ruled is cognizable in a non-capital case. Nevertheless, assuming the claim is properly before the Court, Tarpkin has presented no evidence of his actual innocence; thus, falling far short of the required extraordinarily high threshold showing.

Tarpkin is unable to show that he did not commit the crime as charged. Factually unsupported allegations that Tarpkin did not possess the weapon and had no knowledge of the existence of the weapon is insufficient to undermine the Court's confidence in his convictions. Likewise, Tarpkin's factually unsupported allegations that he possessed the marijuana solely for his personal use and that some unidentified witness could testify he had been smoking the marijuana by himself is insufficient to undermine the Court's confidence in the criminal trial. Tarpkin presents no new credible evidence that suggests he is actually innocent of the crimes for which he was convicted. Tarpkin's failure to submit any new evidence showing that a constitutional violation has probably resulted in the conviction of one who is actually innocent has necessarily means he has failed to carry his burden to show he is entitled to § 2255 relief on his actual innocence claim.

Tarpkin offers no new compelling evidence of his innocence. Tarpkin has failed to show or

provide any evidence that he did not commit the crimes as charged. In sum, Tarpkin has not raised a legitimate claim of actual innocence and there is nothing in the record to support such a claim.

Indeed, the record–the trial transcript– supports the exact opposite conclusion. Therefore, the Court concludes Tarpkin is not entitled to § 2255 relief on his actual innocence claim.

V.  **CONCLUSION**

For the reasons set forth above, the Court decides Tarpkin's conviction and sentence were not in violation of the Constitution or laws of the United States, and the motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will be **DENIED** (Court File No. 1).

A separate judgment order will enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**